

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
Central Division

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 21 2020

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

TAQUILA GREEN,

    Plaintiff,

vs.

HALL MANUFACTURING, LLC d/b/a
BUSH-WHACKER,
    Defendant.

Case No. 4:20-CV-1260-KGB
Hon.
This case assigned to District Judge Baker
and to Magistrate Judge Harris

Alyson Oliver (P55020)
Christopher Brown (P83439) * *admission to the Eastern District of Arkansas pending*
OLIVER LAW GROUP P.C.
1647 W. Big Beaver Rd.
Troy, MI 48084
T: (248) 327-6556
F: (248) 436-3385
E: notifications@oliverlawgroup.com

## COMPLAINT AND JURY DEMAND

NOW COMES PLAINTIFF, TAQUILA GREEN, by and through her counsel and in support of her Complaint states the following:

1. At all relevant times hereto, Plaintiff Taquila Green was a resident of Little Rock, Arkansas.

2. Defendant Hall Manufacturing, LLC d/b/a Bush-Whacker was at all times pertinent hereto a duly licensed company doing business in Little Rock, Arkansas.

3. The events giving rise to this action took place in Pulaski County, Arkansas.

4. The amount in controversy exceeds $75,000.

5. This is a civil action seeking judgment, relief and damages brought pursuant to and arising under the Americans with Disabilities Act ("ADA"), 43 USC 12101 et. Seq., as

amended, for discrimination based upon the disability and the failure to accommodate same. This Court has jurisdiction of this action pursuant to 28 USC 1331 and 1343(4).

6. Venue is proper in this Court.

7. Plaintiff was employed with Defendant from August 2018 to February 2020.

8. Plaintiff worked at Defendants Bush-Whacker Hall Manufacturing plant located at 3706 E. Washington Ave, North Little Rock, AR ("Bush-Whacker") and Hall Tank Company plant located at 2001 E. 5th St., North Little Rock, AR ("Hall Tank").

9. Up until her injury, and for a while afterwards, Plaintiff worked at Bush-Whacker.

10. Prior to her injury, Plaintiff was one of the most productive employees at Bush-Whacker in her respective position and was quickly promoted to team lead.

11. Plaintiff's job included painting tractor parts.

12. Plaintiff's duties and responsibilities also included supervising and training other employees.

13. On September 30, 2019, while attempting to exit her painting station, Plaintiff's feet became entangled in the paint lines/cords, and she tripped. Plaintiff broke her fall with her hands and instantly experienced excruciating pain radiating through her hands and up her arms.

14. Plaintiff left her station and reported the incident to Bush-Whacker's on-site health and safety coordinator Galen Pearson.

15. Plaintiff then left work to go seek medical treatment for the injury to her hands.

16. Plaintiff was informed by her physicians that she had torn ligaments in her hands, sustained potential nerve damage, and had developed carpal tunnel syndrome. She also learned that she had suffered a triangular fibrocartilage complex tear (TFCC).

17. Plaintiff's physician placed restrictions on Plaintiff and limited the amount of weight that she could lift with her injured hands.

18. Plaintiff disclosed the extent of her injury to Defendant when she returned to work the following day.

19. After her injury, Plaintiff was initially placed on 'light duty' and was permitted to work the regular forty hours per week, however she was notified that she was being denied the option of working overtime by manager David Carr shortly after returning to work.

20. While every other member on her team was given the opportunity to work overtime, Plaintiff alone was denied the opportunity to work overtime.

21. When Plaintiff inquired with David Carr as to why she alone was being denied the ability to work overtime, as she had always granted the opportunity to work the abundance of available overtime hours in the past, David Carr stated that it was due to her injury and to take it up with HR.

22. Plaintiff followed her manager's suggestion and inquired with Defendant's Human Resource Department representative, Edwin Vasquez, who confirmed what Plaintiff was told by her supervisor and reiterated that overtime would not be available to Plaintiff due to her injuries.

23. In addition, without explanation, reasoning provided or forewarning, Plaintiff's pay was decreased from $24.00 to $19.00 immediately following her injury.

24. Over the course of a few weeks, Plaintiff insisted with management and the human resource department, that she should be able to work overtime hours and be paid her usual wage for her regular hours.

25. After repeatedly denying and refusing Plaintiff's requests, Plaintiff was transferred by human resources and upper management to Defendant's Hall Tank plant, a short distance away from Defendants Bush-Whacker plant.

26. At her new work location, Plaintiff was again denied the ability to work overtime and denied payment of her usual regular hour wage.

27. In addition, Plaintiff's regularly scheduled working hours were also gradually decreased.

28. At no time did Defendants offer Plaintiff the option to take a medical leave.

29. At no time was Defendants subjected to an undue burden for any form of accommodation Defendants provided to Plaintiff.

30. At all times Plaintiffs could and did perform the essential functions of her job.

31. On February 19th, 2020, Plaintiff was terminated by Defendants after one of Defendant's employees explicitly stated that Defendant could no longer accommodate Plaintiff in her injured state.

32. As a result of the medical history outlined above, Plaintiff is a person to whom the American with Disabilities Act applies.

33. Defendant and/or Defendant's employees and agents were aware of Plaintiff's medical history, diagnosis and needs at the time of the events set forth in this Complaint.

34. Defendant meets all the requirements for employer status under the ADA.

35. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission for the discrimination that took place during the course of her employment which culminated in her termination thereof.

36. A right to sue letter was subsequently issued on August 14, 2020, terminating its processing of the charge.

37. This claim has been timely filed.

## **COUNT I – VIOLATION OF TITLE I OF THE ADA**

38. Plaintiff repeats, realleges and incorporates herein by reference the allegations contained in the foregoing paragraphs.

39. Defendant's treatment of Plaintiff changed immediately following her injury.

40. Defendant begrudgingly allowed Plaintiff to work 'light duty' yet denied her overtime which had the intended effect of reducing her income.

41. Plaintiff's working hours were also subsequently reduced when she was relocated to Hall Tank.

42. Following her injuries, Plaintiff's managers, supervisors and other co-workers, all of whom were employees of Defendant, acted in a discriminatory manner towards Plaintiff and created a hostile working environment.

43. A mere five months after her injury, and while still suffering from her injury, Plaintiff was terminated from her employment by Defendant because, as Defendant then stated, Defendant could no longer provide her accommodation.

44. As a result of Plaintiff being terminated because of her injury, Plaintiff was wrongfully terminated from her employment with Defendant under the provisions of ADA.

45. As set forth above, Defendant and/or one or more of Defendant's employees and agents discriminated against Plaintiff in violation of the ADA, intentionally, with malice and reckless indifference to Plaintiff's rights.

46. As a direct result of the Defendant's discrimination with malice and reckless indifference to Plaintiff's rights, Plaintiff has lost wages, past, present and future, has lost employment opportunities, has suffered physically and emotionally, has had her reputation

jeopardized, and has endured humiliation. Defendant's aforesaid violations of the ADA have caused and continue to cause Plaintiff to suffer substantial damage for pecuniary losses, mental anguish, loss of enjoyment of life, and other non, pecuniary losses.

## COUNT II – VIOLATION OF ARKANSAS CIVIL RIGHTS ACT. (AR STAT. SEC. 16-123-101 ET SEQ.)

47. Plaintiff repeats, realleges and incorporates herein by reference the allegations contained in the foregoing paragraphs.

48. At all relevant times, Plaintiff performed her job duties in a manner that was satisfactory or better.

49. At all relevant times, Plaintiff was an employee, and Defendant was her employer, covered by and within the meaning of AR Stat. Sec. 16-123-101 *et seq*.

50. Plaintiff's injury and related conditions constitute a disability within the meaning of AR Stat. Sec. 16-123-101 *et seq*.

51. Plaintiff was discriminated against, within the meaning of AR Stat. Sec. 16-123-101 et seq, when Defendant terminated Plaintiff while, and because she was injured., as described herein.

52. Plaintiff's disability status was the determinate factor in Defendant's decision to terminate Plaintiff.

53. The actions of Defendant its agents, representatives, and employees were intentional and in disregard for the rights and sensibilities of Plaintiff.

54. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages, including the loss of earnings and earning capacity; mental and emotional distress; humiliation and embarrassment; loss of career

opportunities; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue a gainful occupation of choice.

## **COUNT III – NEGLIGENCE**

55. Plaintiff repeats, realleges and incorporates herein by reference the allegations contained in the foregoing paragraphs.

56. Defendant had a duty to Plaintiff as Plaintiff's employer to provide a safe working environment.

57. Defendant caused the workplace hazard of paint lines and/or cords to be exposed at and around the workspace of Plaintiff.

58. Defendant knew that the workplace hazard of exposed paint lines and/or cords could result in injury to its employees.

59. The burden on Defendant to make Plaintiff's workspace safe and remove the hazards of exposed chords/cables/wires from harm's way was minimal in comparison to the cost and extent of injury that could result from the unsafe work area.

60. As a result, Defendant breached its duty to Plaintiff by failing to make her workspace safe.

61. Defendant's breach of duty did in fact result in Plaintiff sustaining serious injuries which have affected the nature, quality and enjoyment of her life.

62. As a direct and proximate result of Defendant's negligence, Plaintiff has sustained injuries and damages, including the permanent impairment in the use of her hands, medical expenses, physical therapy expenses, loss of earnings and earning capacity; mental and emotional distress; humiliation and embarrassment; loss of career

opportunities; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue a gainful occupation of choice.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

63. Plaintiff repeats, realleges and incorporates herein by reference the allegations contained in the foregoing paragraphs.

64. Plaintiff was belittled and humiliated by members of Defendants human resources and management in front of her co-workers.

65. Defendant was told and made to feel that she was 'taking advantage of the system' and of her employer simply because she was injured on the job.

66. Defendant through its employees bullied and tried to intimidate Plaintiff into voluntarily resigning.

67. Defendants inexplicably and without justification or forewarning cut Plaintiff's wages which caused her anxiety, stress and depression associated with trying to figure out how she would be able to pay her bills with the reduction in her wages.

68. Defendant's conduct as outlined above was intentional.

69. Defendant's conduct as outlined above was extreme, outrageous, and of such character as not to be tolerated by civilized society.

70. Defendant's conduct resulted in severe and serious emotional distress which has caused Plaintiff physical harm.

71. As a direct and proximate result of Defendant's conduct, Plaintiff has been damaged in the manner outlined herein.

## REQUEST FOR RELIEF

72. Plaintiff repeats, realleges and incorporates herein by reference the allegations contained in the foregoing paragraphs.

73. Plaintiff, having sustained damages in excess of $75,000 as a result of Defendant's actions, hereby requests that this Court award Plaintiff in an amount deemed appropriate by this Court: compensatory damages, punitive damages, exemplary damages, back and front pay, all costs and attorney fees, and all other relief determined appropriate by this Court.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

Respectfully Submitted,

OLIVER LAW GROUP P.C.

Date: October 16, 2020

Christopher Brown (MI Bar No.: P83439)
*Admission to the Eastern District of Arkansas Pending*
1647 W. Big Beaver Rd.
Troy, MI 48084
T: (248) 327-6556
F: (248) 436-3385
E: notifications@oliverlawgroup.com

*COUNSEL FOR PLAINTIFF*